Chris Napolitano for Appellant Sheriff Cole in Christian County, Missouri, may it please the court. Alter ego. Aging. These are words that describe the relationship between the deputy sheriff and the sheriff in the state of Missouri. What's more, Missouri law says that all deputies have all the powers and all the authorities of the sheriff, and that the sheriff is liable for his deputy's conduct. Now, as of August 2015, when Sheriff Cole terminated Bruce Curtis, the law did not clearly establish that political loyalty was an inappropriate requirement for a deputy sheriff. In fact, under these circumstances, this court's case law suggests that it was an appropriate requirement. Now, importantly to this court's consideration is the fact that there is no case clearly and definitively establishing that political loyalty is an inappropriate requirement. And as a result, in order for Cole not to be entitled to qualified immunity, there would have to be a robust consensus of cases, putting that question beyond debate. And there is no such consensus. To the contrary, this court, a year before Sheriff Cole terminated Bruce and Curtis, issued its opinion in North v. Walsh County. And in that case, a North Dakota sheriff terminated a deputy who ran against him and made negative comments about him during the course of that election. Now, Bruce and Curtis would like this court to ignore the Nord opinion. And they argue that this court should ignore it because it applied Pickering-Connick test as opposed to the Elrod Branty test. But that's not entirely true. This court, while the Pickering test was determinative, applied, analyzed, and made determinations under the Elrod Branty test. And in doing so, determined that a sheriff's deputy in North Dakota was the type of position for which political loyalty was an appropriate requirement. Now, importantly, this court, in reaching that conclusion and in analyzing the Elrod Branty test, didn't look to Shock and See v. Ramsey, as Bruce and Curtis point this court to. They looked to the Fourth Circuit case of Jenkins v. Medford, the en banc decision from the Fourth Circuit. And in that case, a sheriff in North Carolina terminated some deputies for opposing his candidacy in the election. And the court looked to the relationship between a sheriff and a deputy, the inherent powers that a deputy has under the laws of North Carolina, and determined that the deputy acts in the name of the sheriff. The sheriff is liable for his deputy's conduct and has all the same powers and authorities as the sheriff. And as a result, determined that so long as the employee is a sworn deputy engaged in law enforcement activities, political loyalty is an appropriate requirement for the job. And notably here, factually, neither Bruce nor Curtis dispute that they were sworn deputies engaged in law enforcement activities. It's one of the rationale in Jenkins, which this court relied upon just a year before Bruce, er, told terminated Bruce and Curtis. Bruce and Curtis's positions require political loyalty. What indicates that it requires political loyalty, or are you really just arguing that there's an absence of, er, of authority to the contrary? Well, really, I think it's both. I think the robust consensus of cases would prove that it is an appropriate requirement based on the rationale in Nord and how they relied on Jenkins. Well, when you say it's a requirement, it doesn't mean that the new sheriff has to terminate anybody that has ever disagreed with him, but that it permits, er, a requirement that individuals who are going to be in such trusted positions with the sheriff, er, not be, er, in opposition to him as, as he proceeds. That's accurate. And what I meant to say is that it's an appropriate requirement, not necessarily a necessity. And I think that the Bauer v. Bosley court from this court in 1985 made it that clear that the question isn't whether it's a necessity, it's whether it's an appropriate requirement. But to answer your question, Judge, I think that the robust consensus of cases, especially Nord applying Jenkins, would say that under the circumstances, as are true in Missouri, where a deputy is the agent, alter ego, has all the powers of the sheriff, and the sheriff is liable, that that is a position for which political loyalty can be required. Well, the reason why I'm asking the question is because I don't see anything in Missouri says, hey, political loyalty is absolutely an appropriate requirement. Because you do have that, and I realize you make arguments why the statute doesn't apply, but it's at least, maybe you make the lesser argument, or maybe the lesser argument makes more sense to me, which is that there's nothing under Missouri law that prohibits making political loyalty a part of being a, you know, a deputy. I think that's absolutely true as well. And that would go to the clearly established aspect of our qualified immunity claim. Because there's nothing in the law that puts Cole on proper notice and puts the question beyond debate that political loyalty, as you say, is not an appropriate requirement. Which was not true, incidentally, in the Minnesota case. In the Minnesota case, it appeared that there was some certainty as to whether political loyalty was appropriate, and the answer was no. That's correct. In Minnesota, which is apples and oranges to Missouri, there's a civil service statute, right? Employees are tiered in between classified and unclassified employees at will for a cause. And the court in that case determined that because cause is required, and these are merit-based positions with limited exception, and they were protected by a collective bargaining agreement that prohibited political retaliation, that those deputies, political loyalty was not required of those deputies. But that is not the case in Missouri. There is no classified, unclassified positions. All deputies serve at will, at the pleasure of the sheriff, and are subject, frankly, to arbitrary terminations at the whim and will of the sheriff under 57-275 in the Missouri rise statute. The shock and see, in addition to not being relied on by NORD, a much more recent case, a year before Sheriff Cole took his action, is simply just not apples and oranges to Missouri law. Let me ask you a question. I want to ask you a question about duties. And the 11th Circuit, I think in an opinion by Judge Pryor, said that you, he used the word, the phrase, categorical approach, and I really hesitate to use that because, as you heard, we just heard an ACCA case which uses the categorical approach. But he says you have to look at basically what the duties are. So here we have two deputies with vastly different duties. One was a detective and one was sort of a computer IT network person. Do you look at the actual things they do, or do you look at how a deputy sheriff is defined in whatever, under state law or the municipality, et cetera? Well, as this court said in Bauer v. Bosley, the proper focus under L. Rod Branty are the powers inherent in the office, not any particular function that an occupant of that office performs. And the reason for that, and this court cited the 7th Circuit for that proposition, and the reason was the person assigning the duties of the position could change their mind at any time and require something more from that position. And I think the 11th Circuit takes an approach, as you were talking about, where the duties are statutorily defined for the responsibilities of that position. You don't need to look to the actual duties because the state law tells you what they are. And in Missouri, they are the duties of the sheriff, period. Now, if the statute didn't say what they were, then the 11th Circuit says at that point in time what that position does. But doesn't the Branty test focus on the actual duties? I think it looks to the duties of the office. And this court has said so in Bauer v. Bosley that the proper focus is on the powers inherent in the office and not the particular function. So I would say that L. Rod and Branty, while they were the seminal cases, there's been a whole slew of case law and, frankly, not all that consistent in various circuits construing these exceptions. And our point I mean that in part because it turns on state law in terms of what the sheriff's capacity includes in terms of their liberty to discharge. It certainly can, Your Honor, yes. And so to your point, I want to address the so-called first responder statute because we make arguments in our briefs, several arguments, as to why we believe that it's not akin to the statutes in the Minnesota case. And the first of which is, and this is not an insignificant fact, it doesn't appear within the chapter of the Missouri Code that defines the scope of the sheriff's authority or restricting his authority in any way. It's under Chapter 67, which is kind of a miscellaneous powers of government. And it's talking about what political subdivisions can and cannot do. And if you look kind of at the Is there a cause of action to enforce it? No. No, there's no. The legislature does not specifically say someone has a private right of action if the statute I know they don't specifically say that. Is there a cause of action, though, under Missouri law that could be Not that I'm aware of. No. No. There's no general cause of action. I mean, I know they didn't, in this particular statute, create a private right of action, but I'm not familiar enough with Missouri law to know whether there would be some other avenue. All I can say is I'm not aware of one, and it wasn't alleged in this case. And beyond that, I really can't definitively answer your question. But not one which I am aware. But the language used in So you mean you think it's more of a regulatory statute, where the legislature is telling subdivisions, you can't make these prohibitions, but it's not enforceable by individuals? I think that's right, Your Honor. I mean, I could give you my opinion. It doesn't mean much, but I'm asking what the law is. Well, I don't think the law is particularly clear. I mean, I know that it doesn't give you a right of private action within that statute. And I think the purpose of the law was there were probably a lot of these old antiquated handbooks in counties and cities that said, you know, you can't run for office and things like that. And they probably didn't want the counties to pass those. But 67-145, at its core, does not in any way modify the obligations under 57-270 that a deputy has, which are the same as the sheriff. It doesn't change the fact that they're an at-will employee serving at the pleasure of the sheriff, and the sheriff does not have to have any cause whatsoever to terminate him. They are his agents under the law. And as such, they have a duty to their principal, the sheriff. And more specifically, if you look to the language of the statute, it just doesn't apply to a sheriff. In Minnesota, the statute at issue prohibited stopping political activity. Why would it list as being potentially applicable to sheriff's deputies if they could qualify as first responders? I mean, there's any number of reasons. I would also point out that it also lists sheriffs as the potentially protected class under first responders, and it would be nonsensical to have a statute prohibiting a sheriff from prohibiting himself from doing something. I mean, there could be a situation where a particular deputy takes a position that the governing body, the county commission, for example, doesn't like, and they try to defund the sheriff's office to cut off that person's salary as a warning shot to the sheriff that you better keep your guys in line or something to that effect. So there's any number of reasons, and to your point, it's not clearly established what those reasons are. So either way, Cole should be entitled to qualified immunity. But back to my other point, Cole is not a political subdivision. In those other statutes in Minnesota, the legislature chose the term any employee or official of a political subdivision shall not. Here in Missouri, that language, any official or employee thereof, is not included in the statute. And the Missouri legislature, at the first statute in Chapter 67, references a different Missouri statute defining political subdivision. And that definition requires, in order to be a political subdivision, that they have the authority to levy taxes. Is the sheriff elected or appointed by the county board? In Minnesota, they're elected. So I'm curious about that. That's a good question, Your Honor. They are elected. Okay. And the circumstances in which Sheriff Cole is elected, as the brief points out, are very unique. It was a special election. The previous sheriff had resigned and pleaded guilty to federal felonies regarding misuse of his office and the funds. So even under that standard, which there's been no case cited that would have similar circumstances. Does that mean a subdivision, though, could circumvent this prohibition just by having its officials issue edicts that first responders can't engage in political activity? Because the officials aren't subdivisions? Well, I mean, if the political subdivision instructs somebody to do it, if the county commission were to say, public works department person, you've got to fire this person, that would still be an act of the political subdivision. But as long as the policy makers are acting on their own initiative, then prohibitions on political activity are okay? I mean, I think that this statute, as defined by the Missouri legislature, is only talking about the body, the political entity that has the authority to levy taxes. And so... Well, I'm talking about officials who make policy for subdivisions who have authority to levy taxes. If the political subdivision had authority, in this case, over the sheriff, there might be more to that point. But here... The county doesn't have authority to levy taxes? The county does, but the county doesn't have the authority to tell the sheriff what to do with that money. And I'm sorry, I'll wrap up my thought here, but I would like to reserve the rest of my time for rebuttal. Certainly. Mr. Graham? Thank you, Judge. Kevin Graham appearing on behalf of Deputies Curtis and Bruce, and I'll probably try to refer to them as deputies to hopefully make it more simple. May it please the Court. We are here today on a very limited... We are here today on the review of qualified. We're not here today to fully delve into the entire case. This case hasn't gone to trial yet. We're here on a very limited review of what is qualified in a community. It's a very narrow focus for this Court. And what the Court has said... There are basically two things we have to... Did the plaintiffs, did the deputies, make out a submissible case or an allegation of constitutional deprivation? And two, is it under a clearly established law? Now, it is very clear, and it has been clear for 40 years, that the government may not condition public employment on employees' exercise of his or her First Amendment rights. With few exceptions, the Constitution prohibits patronage dismissals. But isn't one of those exceptions, in our cases or cases around the country, sheriffs after they've been elected in certain jurisdictions, being able to dismiss those who they felt might be disruptive to the operation of the force or those who might be in positions of trust that couldn't be counted on? Certainly, there are exceptions to this general law. And it's not just county deputies, county clerks, assessor employees, but there are, as you referenced, there are specific cases, there is specific case law, primarily out of the Fourth and Eleventh Circuits, which do address the specific role that sheriff's deputies play with regard to the sheriff. Now, let's be real clear, that's never been adopted in the Eighth Circuit, ever. And it's been considered consistently from, I think, from multiple Eighth Circuit cases coming out of Minnesota, Arkansas, Nebraska, North Dakota, I mean, there are multiple cases that have come out which have the opportunity to address this issue and just simply don't. That's not the law in this circuit. And it is the law in this circuit that, just like anywhere else, like in most circuits, government employees have the right to be involved in the campaign. That's just simply all this is, is two guys who want to put out yard signs, who want to tell their neighbors, hey, vote for this person, who maybe posted on Facebook saying vote for this person. It is the essence of what politically protected speech is under the First Amendment. I mean, simply put, if the Eighth Circuit were to adopt the Fourth Circuit's rationale, I don't know that there's anything left that any sheriff's deputy, regardless, if we talk about the IT gentleman, that the IT guy who is a sworn deputy may be fired regardless of what he says just because he helped an opponent run for office. And that would be not a small change in the law in the Eighth Circuit. It would be a dramatic change. It would overrule decades in the Eighth Circuit. What's your view of the Nord decision? I think the Nord decision is an applicable. It's been analyzed. So from a factual basis, it's a deputy running against his boss, which is a big deal. I mean, we can all agree that's an uncomfortable situation, right? Deputy running against his boss. And in the context of the campaign How different is it when the deputy campaigns for the opponent? Well, I think most people would think, I certainly think it's significantly different. And how I would say it's different is, because I think it really goes to clearly established, is it may not have been clearly established that you're allowed to run against your sheriff and keep your job. That's not this case. This case is... What about statements made to colleagues about the nature of the person's character who's going to come in, that they're potentially criminal? That's not part of this case. We're not alleging that. We're not asking for protection for that. So in Nord, they specifically asked for protection of the statements made out on the campaign trail. That we need to improve the sheriff's department. We need to upgrade facilities. We need to give better equipment. All the things that were said on the campaign trail in Nord. That's not said here. We have alleged only, and we get to define what our case is. We've only alleged that they helped somebody run for office. And we do that at our peril. If we don't allege enough, if we don't ask for more protection from speech, we may suffer that consequence. But we did not ask for protection from private comments made to friends. And of course, those comments, they weren't relied on by the sheriff. I don't think the sheriff knew about them. They are absolutely made in the context of sheriff's deputies talking to each other. They weren't put on Facebook. They weren't done in any way that would make them public, or in any way jeopardize the integrity of the office. And it really is a red herring. We're not making that claim. We are only asking for protection from the involvement in the campaigns. That's it. Talk to me about state law, though. And both the first responder statute, the statute opposing counsel came up with, and the alter ego. I mean, sort of a lesser version of what Chief Judge Smith is talking about is, you know, generally speaking, a deputy sheriff, and it seems to be true under Missouri law, a deputy sheriff is the alter ego of the sheriff. That's how it's defined. I think that's generally true throughout the country. That's the nature of what a sheriff is. When we say they're the alter ego, a deputy cannot effect an arrest unless they are essentially sworn by the sheriff. So this is something I've dealt with for 20-some years. I've been the county attorney for Clay County, Missouri, for most of my career. I'm not currently, but I have been. And so dealing with the sheriff's department is something we deal with all the time. The mere fact that they are empowered by the sheriff doesn't mean that they're the same as the sheriff. They certainly can't obligate the county for budget or the sheriff for budget, for example. They can't enter into contracts. There's all sorts of authority that the sheriff actually has that the deputies don't. And there's no question about it. And that the sheriff gets to tell the deputies, here's the policy of this office. Today we're going to go out on this highway and we're going to do traffic stops. Tomorrow we're going to go deal with car break-ins in this subdivision. We're going to investigate that. The deputies don't have kind of discretion to say, no, no, I'm not going to do that. I want to do what I want to do as a deputy. Well, okay, assuming there's some limitations, the deputies still are considered alter egos by statute and by case law. So then you need to have some affirmative showing that I think that there's political, that deputies need to have political protection, kind of like the shock and see test. I think certainly, number one, to extend what you're saying, you're heading towards the Fourth Circuit case of adopting that, again, that huge change in case law. What cases would we have to overrule? I think you'd probably have to overrule shock and see. I think you'd have to. I just cited shock and see. Go ahead, I'm sorry. I think Thompson would have to, I think, be overruled. If you're saying in the Eighth Circuit that deputies have no political rights to be involved in campaigning for a friend, for a coworker, again, that overrules a lot. Now, specifically as to Missouri, obviously the statute. That's not actually what I was saying. What I was saying was then don't you need some affirmative protection of political freedoms, you know, ability to campaign, ability to take political positions in state law like shock and see. Well, I think certainly 67145 sets it out, that there is protection for first responders of which clearly deputies are. It is law in Missouri. It's been law for only about six or seven years, so it was certainly considered recently. There was a reason it was passed. But there is no statewide law in Missouri that says, you know, here are the employment rights you get. I mean, we're talking about employment at will, and that's the case throughout the country primarily. It's certainly the case in Missouri for almost any kind of job. Employment at will does not alter this landscape. This is the expectation. There's no doubt here. There's no question here that a sheriff can dismiss a deputy at their pleasure within the parameters of the law. Parameters of the law are they can't violate Title VII. They can't violate the ADEA. They can't violate the Disabilities Act. They can't violate the Missouri Human Rights Act. They can't violate FLSA. They can't violate 67.145. I mean, there are lots of statutes that you can't violate. And what's instructive here is that there is a statute that was ignored. There was another statute which was ignored, which is 57, I think, .201, which actually gave specific rights to deputies about how they can have a hearing and have an opportunity to respond to their termination. And it requires the sheriff to extend rights in writing and give an opportunity to be heard. The sheriff didn't even extend the rights. Testify didn't even know about the statute. It was completely ignored. Same thing. There were very specific policies. Which statute? I'm sorry. Which statute? 57.201. Additionally, there are very specific policies of the sheriff's department that the sheriff said, these are in play. I understood that these policies existed when I took the office, and there's a very specific policy on how you discipline sheriff's deputies. He chose not to even look at it. He chose not to follow it. He chose to just simply terminate people. And, of course, we're talking about 11 deputies here. There are two in front of you, but there are 11 involved. Are those statutes relevant, though, here? I mean, really this is all about whether or not to protect political viewpoints, political actions, political campaigning. I mean, the fact that he didn't get a due process hearing, I don't understand that that is what you're arguing here is a problem with the termination. Well, I think it's because it shows. So I'll give you an example. Sure. In Nord, the court really focused on that the sheriff was very concerned about doing the termination correctly. Went and talked to the HR person. Went and talked to the county attorney. Tried to find out, hey, can I do what I want to do? And took a measured, thoughtful approach to terminating Mr. Nord. In this case, no such evidence exists. The evidence is he simply said, no, I chose not to contact the attorney. I chose not to reach out to HR. I chose not to consult policy. I chose not to consult statute. I fired these guys within minutes of taking office. And to me, that shows payback. That shows it's not a considered approach. It's an issue that was very specifically relied on in Nord that's not here. And the fundamental part of this, I think the fundamental analysis is, this is a case under L. Rod Branty. This is a case where, and probably the most recent case on this is Thompson v. Schock, 2017 case. Quoting from that, page 793, when the constitutional right at issue involves joining, working for, or contributing to the political party and candidates of the employee's choice, we apply the L. Rod Branty test. It's a very simple analysis. It's the correct analysis. If all you're doing is campaigning, if that's all you're doing, this court needs to apply L. Rod Branty. And it's not a new evolution in the law. This goes back to the L. Rod case. This is 44 years in the making at this point. There is no doubt that this is clearly established. Importantly, when Schock and See said that it was clearly established, or we say that Schock and See made it clearly established, the court itself in Schock and See said, this has already been established. This was established by the Supreme Court decades before. So here we are nearly half a century after some of these important decisions out of the Supreme Court, and there's still efforts to try to say that doesn't say what it says clearly. They have the right to just put up a yard sign, to wear a T-shirt that supports their friend. Another issue, I certainly want to make sure I Well, I want to just really ask you about clearly established law. There seems to be an internal circuit conflict, maybe, about the burden of proof on clearly established law in the First Amendment context. I think you cite the Ianni case, which is a 1997 case, and then Morgan v. Robinson seems to place it on the plaintiff to show that the law is clearly established. Help me with that, and what's your best argument that your case is the right case? I'll tell you my best argument is I don't think it matters because it is so clearly established. I don't think it matters whose burden it is because it is so clearly established. The Nord case is talking about an entirely different scenario. It's talking about somebody running against the sheriff, and it's talking about speech on the campaign trail about the office, and that's why the Pickering-Connick test was applied. This is a situation about just involving yourself in the campaign itself. Okay, let's get past that and get to the standard then. Okay, so I do believe, regardless of whose burden it is, it's clearly established, and it's not even close. One thing I certainly want to make sure I bring out, it needs to be understood, these are two Republicans running against each other. So when we talk about the difference in political philosophy, there is none. What does that have to do with the standard? I mean, I'm just trying to figure out who has the burden of proof here. Well, I would say, I think probably, I mean, I would probably concede I think Morgan gets us there. Okay. And that's probably at least, again, from our perspective, I think that's the easiest approach. Thank you. Yeah. I appreciate that. Final comment. I know I'm short on time. Please keep in mind, these are two Republicans running against each other. It is a situation where there are vastly different political theories involved in this campaign. It's not a matter so much of the political affiliation or in terms of party. The concepts here have to do also with the sense of personal loyalty and a decision about how will this office work with the kind of dissent that could destroy morale and the ability of the office to function. Well, again, so that language or those comments are outside the pleadings. That's not what's in front of this court. And the concept of personal loyalty to an individual, I think, is a bit of a mistake when we're really talking about political loyalty and really loyalty to the office. One of the more instructive pieces of evidence in this case is that Mr. Bruce called the sheriff between the election and taking office, only a matter of three days, and said, Hey, congratulations. I support the other guy. I hope you do well. I can't wait to work with you. I look forward to it. Is my job okay? And receives an affirmative yes. There was absolutely no indication presented to the sheriff that Mr. Bruce or anybody was going to fight him. And they get to define how they want that relationship to be. But you're saying it would be completely clear to a sheriff in the defendant's position to know the difference between Elrod Branty and Nord and other decisions of our court and courts regarding what standards ought to apply to his decision? Yes. I mean, I think the law is clear. I mean, so Shawkins says it's clear and it hasn't changed. And the other court, and, again, that's under Elrod Branty, if the sheriff had a concern, that's when you talk to your counsel. You know, Shawkins says it is a clear issue. It's resolved. You're allowed to go out and campaign and not be fired under the First Amendment. It's just that simple. And Elrod v. Burns does the same thing. And it's a very thin line or a very simple line from Elrod in 76, Shawkins in 2007, and the decision of the statute in 2013. The time he took office, August 7, 2015, raised his arms, swore to uphold the laws, that was the state of the law. I see I'm done. Thank you very much. Thank you. In response to the counsel's argument, I think that it's well settled that under qualified immunity, you don't look to the generalities. The right has to be clearly defined. And if Elrod and Branty tell you anything, it's that there are exceptions to the general right that he's advancing, that you are free from patronage and dismissals. And after Elrod and Branty, there's been a slew of cases reaching different results. And I think this court's, in Morgan v. Robinson, this court sided to the 11th Circuit case of Randall v. Scott. And there the court determined that they couldn't find the law clearly established when it required a scrupulous legal analysis to reach, to determine whether the plaintiff had a right. And that would be true here. Even if you want to look at Shawkins, you have to look at it in light of Nord. And Nord looked at the Fourth Circuit. And under the Fourth Circuit, if you were a sworn deputy engaged in law enforcement activities, which is not a dispute here, political loyalty is required. And so Cole, under those circumstances, that case being decided just a year before he took office, any reasonable official in Cole's position would think that political loyalty is an appropriate requirement of the job. And for that reason, he is entitled to qualified immunity. I see I'm out of time. Thank you. Thank you. The court thanks both counsel for your presence and the argument you provided to the court today. The briefing that's been submitted will take the case under advisement. Thank you.